**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Industrie Service, LLC,<br><br>Debtor. | Case No. 17-02995-hb<br><br>Chapter 11 |

**DEBTOR'S PLAN OF REORGANIZATION**

Filed by the Debtor-in-Possession on November 30, 2017

**Submitted by**:  McCARTHY REYNOLDS & PENN, LLC
G. William McCarthy, Jr., I.D.#2762
Daniel J. Reynolds, Jr., I.D.#9232
W. Harrison Penn, I.D.#11164
*Attorneys for the Debtor*
1517 Laurel Street
P.O. Box 11332
Columbia, SC 29201-1332
(803) 771-8836
(803) 765-6960 (fax)

## **Table of Contents**

|  |  | **Page** |
|---|---|---|
| Article I | History and Other General Information Relating to the Proposed Plan of Liquidation | 3 |
| Article II | Property of the Debtor | 7 |
| Article III | Plan of Liquidation | 9 |
|  | Plan Classifications | 10 |
| Article IV | Feasibility of Plan and Means of Effectuation | 12 |
| Article V | Conditions Precedent and Implementation of the Plan | 13 |
| Article VI | Claims Bar Date, Claims Objections, and Post-Confirmation Status | 13 |
| Article VII | Executory Contracts | 15 |
| Article VIII | Tax Consequences | 15 |
| Article IX | Jurisdiction | 16 |
| Article X | Post-Confirmation Acts | 16 |
| Article XI | Cram-Down for Impaired Creditors Not Accepting the Plan | 17 |
| Article XII | Discharge of the Debtor | 17 |

## DEBTOR'S PLAN OF REORGANIZATION

Industrie Service, LLC (the "Debtor") proposes the following Plan of Reorganization ("Plan") pursuant to Chapter 11 of the U. S. Bankruptcy Code. Along with this Plan, the Debtor has filed its Disclosure Statement (the "Disclosure Statement"), which the Debtor believes and asserts contains adequate information for Claim and Equity holders to make a decision on the Plan. The Disclosure Statement and its Exhibits, including any amendments or addendums thereto, are hereby specifically incorporated in this Plan by reference.

## ARTICLE I

### History and Other General Considerations Relating

### to the Plan of Liquidation

1. <u>Background</u>. The history and background of the Debtor is provided in the Debtor's Disclosure Statement filed on November 30, 2017.

2. <u>Financial Condition of the Debtor</u>. The current financial condition of the Debtor is set forth in the Debtor's bankruptcy schedules as amended.

3. <u>The Debtor's Proceedings under Chapter 11</u>. The Disclosure Statement provides an adequate history of the Debtor, description of the proceedings by the Debtor in this Case, and description of this Plan.

4. <u>Definitions</u>. The following words, terms and definitions shall be used and apply exclusively for this Plan:

    a. <u>Acceptance</u>. A specific class of claims has accepted a plan when such plan has been accepted by <u>those voting</u> individual creditors in that class that hold at least two-thirds (2/3) in amount (of money) and more than one-half (1/2) in number (greater than 50%) of the <u>voting</u> individual allowed claims of that class of creditors. A class of interest has accepted a plan if such plan has been accepted by holders of such interest that hold at least two-thirds (2/3) in amount of the allowed interest of such class held by holders of such interest (i.e., number of shares held by shareholders or partners) <u>that have voted</u> in confirmation of such plan. <u>It is important to note that computation in the confirmation voting process is based only upon the total amount of claims actually voting rather than on claims proven and allowed</u>. Notwithstanding any other provision of this section, a class that is unimpaired under this Plan is deemed by law to have accepted this Plan, and solicitation of acceptances with respect to such class is not otherwise required.

    b. <u>Allowed Claim</u> shall mean each individual creditor's claim or claim of interest whose validity is accepted by the Debtor for payment, or if challenged by the Debtor, a claim which is ultimately proved by the claimant and approved by the Court after notice. Some claims by law can be approved only by the Court for payment, e.g., administrative and

3

        priority claims.

d.     Cash on Hand shall refer to that cash available, on or immediately after confirmation, and which is in the hands of the Debtor, and has been derived from the total operations of the Debtor.

e.     The Case shall mean chapter 11 case no. 17-02995-hb and shall generally refer to the proceedings of the Debtor under this chapter 11, which Case commenced in this Court on June 16, 2017.

f.     Chapter 7 shall mean a hypothetical case administered under 11 U.S.C. Sections 701 et seq., wherein an estate, identical to the Debtor's, with identical assets and liabilities, has its assets liquidated.

g.     Chapter 11 shall mean a case being administered under 11 U.S.C. Sections 1101 et seq., for the reorganization or liquidation of the indebtedness of a debtor, and the continued operation of its business.

i.     A Claim of Interest or "Equity Interest" (more particularly) shall mean any claim for equity ownership, whether actual, or contingent. "Interest" refers to equity securities (shareholders' interest), partnership interest or proprietorship interest.

j.     Claims shall mean any right or claim to a right to receive payment of monies from the Debtor or right to an equity interest in the Debtor held by any party.

k.     Claims Bar Date shall mean the last day for filing Claims or a Claim of Interest against the Debtor's estate in this Case. Unless otherwise ordered by the Court, the Claims Bar Date was October 23, 2017 for all creditors except governmental units and shall be December 13, 2017 for a governmental unit as such dates were set forth in the Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines issued on the Petition Date in this Case.

l.     Class of Claims shall mean all types of claims or interests (e.g., secured, priority, unsecured or Claims of Interest) which are substantially identical in kind or nature and are grouped together without any unfair discrimination or treatment for payment by this Plan.

m.     The Code is 11 U.S.C. Sections 101, et seq., also referred to as the "Bankruptcy Code".

n.     Confirmation of this Plan shall be effective when the signed Order Confirming Plan is filed by the Court to implement the proposed Plan, after the Court has found that the Plan: (1) has been accepted by the requisite number of creditors and parties in interest eligible to vote thereon, (2) is feasible, (3) is fair and equitable, (4) does not unfairly discriminate, and (5) meets all of the other requirements of 11 U.S.C. Sections 1123, 1126 and Section 1129, and the Order Confirming Plan is entered.

o.     The Court shall mean the United States Bankruptcy Court for the District of South Carolina.

4

p.  The Debtor shall mean Industrie Service, LLC, the debtor in Chapter 11 Case No. 17-02994-hb.

q.  The Disclosure Statement shall mean the Debtor's Disclosure Statement filed on November 30, 2017, including any subsequent amendments or addendums thereto.

r.  The "Effective Date" or "Effective Date of Confirmation" for cash distribution purposes as it is referred to in this Plan, shall mean the first day of the first full month that is thirty (30) days after entry of the Court's Order Confirming Plan unless any Order Confirming Plan shall be appealed, in which case the Effective Date shall be the day after any Order Confirming Plan shall become a final, unappealed order.

s.  EMF shall mean EquipMax Finance, LLC an entity whose single member is Florian Gleibs who is also employed in the Debtor's administration. EMF is the party to several Executory Contracts with the Debtor.

t.  Executory Contracts shall mean all contracts or agreements with duties owing by each of the parties to such contracts or agreement, which duties remain to be performed or satisfied by the parties in the future.

   i.  Personalty Leases shall mean all leases between the Debtor and third parties for the use of any and all personal property.

   ii. Realty Leases shall mean all valid, enforceable leases of real estate between the Debtor and other parties.

u.  Final Consummation shall refer to the date and time at which the execution of all provisions of the Plan, appropriate requirements of the Bankruptcy Code, and applicable supplemental orders issued by the Bankruptcy Court have been fully complied with and accomplished.

v.  FMS shall mean Fabrication Mechanical Service, LLC an entity which is owned by Clarissa Blum, an insider of the debtor, and contracts with the Debtor to provide labor for service to third parties

w.  An Impaired class shall mean a class of claims given, under this Plan, less than the full amount of their filed and approved individual claims or claims where contract rights are modified or compromised by the Plan.

x.  The Petition Date shall mean the date on which this Case was filed with the Court, June 16, 2017.

y.  The Plan shall mean this Debtor's Plan of Reorganization under chapter 11, filed with the Court on November 30, 2017, including any subsequent amendments or addendums thereto.

z.  Priority and Administrative Claims shall mean all claims entitled to priority status under 11 U.S.C. Section 507 and Section 364 or other specific provisions of the Code. These claims include, but are not limited to, generally, all costs and expenses incurred during the

5

    liquidation or reorganization proceeding; all wages allowed priority status which were owing by the Debtor at the time of filing up to $12,475 per claimant; all post-petition wage claims due at confirmation; all taxes owing to the United States, any individual State or local taxing authority; all post-petition debts incurred and unpaid since the commencement of this Case; and all other statutory costs or fees assessed or assessable by the Court, and any claims given priority status during this proceeding by specific order of the Court.

  aa. <u>Secured Claim</u> shall mean each individual claim completely or partially secured by real estate mortgages, security agreements, assignment agreements, consignment agreements, chattel mortgages, recorded lease-purchase agreements, liens or any other legal encumbrance which is entitled to secured status under Title 36 of the Code of Laws of South Carolina (UCC provisions) or South Carolina law.

  bb. <u>Substantial Consummation</u> shall refer to that date and time on which the transfer of all or substantially all of the property proposed by the Plan to be transferred has been achieved; the assumption by the Debtor under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan has been achieved; and, finally, the commencement of the distribution of some payments under the Plan has begun.

  cc. An <u>Unimpaired</u> class shall mean a class of claims whose rights are not affected by this Plan, or which is entitled to and shall receive under this Plan full satisfaction of its filed and Allowed Claims as required by the Code. Unimpaired claims are deemed to have accepted this Plan by specific provision of the Code and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required.

  dd. <u>Unsecured Claims</u> shall mean all claims against the Debtor other than Secured Claims, Priority and Administrative Claims, or Claims of Interest.

  **NOTE:** <u>The defining of the various parties of interest and claimants against this estate in no way imputes any relative priority among them nor is it to be construed to validate or approve any of their claims. Any and all terms not defined hereinabove shall be read to have the meanings specifically set forth herein below or to otherwise have their most common every day meaning where definitions are not specifically set forth herein.</u>

## ARTICLE II
### Property of the Debtor

**Primary Assets**

The Debtor's primary assets consist of accounts receivable, machinery, equipment, furniture, vehicles, and causes of action against third parties for a total estimated value of $1,583,178.85. Because Debtor's pre-petition accounts were levied upon by the IRS, there were no cash accounts on the Petition Date. As demonstrated by the Debtor's monthly operating reports, which are found on the Court's docket or can be provided by request to hpenn@mccarthy-lawfirm.com, since the petition date, Debtor has generated income in the amount of $708,276.01 and incurred expenses in the amount of $599,778.22 thereby generating a net income of $108,497.79.

**Bankruptcy and Other Causes of Action**

The Debtor is continuing in the process of reviewing its financial records with regard to whether the Debtor has any causes of action relating to its outstanding accounts receivable or pursuant to 11 U.S.C. §§ 547, 548, 549, and 550. To any extent it is determined that the Debtor has such causes of action, the Debtor, or its assigns, will bring such actions prior to the closing of this bankruptcy case. At this time, the Debtor cannot project that any and all such causes of action will create any additional funds for distribution to the unsecured creditors of the estate. **The Debtor specifically reserves all of its rights related to any and all Chapter 5 Causes of Action that are determined to exist, specifically including, but not limited to, the Debtor's rights to file suit on potential Chapter 5 Causes of Action.**

## ARTICLE III
### Plan of Reorganization

Unless otherwise ordered by the Court, the Claims Bar Date was **October 23, 2017 for all creditors except governmental units** and shall be **December 13, 2017 for a governmental unit** as such dates were set forth in the Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines issued on the Petition Date in this Case. Unless specifically ordered otherwise by the Court, only Claims scheduled by the Debtor without any contingent, unliquidated, or disputed notations and those Claims filed on or before the Claims Bar Date shall constitute Claims asserted against the Debtor in this Case. Any Claims filed after the Claims Bar Date shall be automatically disallowed unless the claimant successfully obtains an order of the

Court allowing their late-filed proof of claim. Any claim for United States Trustee fees is not subject to any deadline for administrative claims. **The Debtor specifically reserves its right to object to any scheduled or asserted claims prior to the closing of the bankruptcy case.** The Debtor is seeking information from the IRS regarding the amount and dates of its pre-petition levies.

Debtor's Plan is a reorganization plan and the allowed claims of creditors will be paid as outlined in the Debtor's Plan. Based upon the cost reductions and employee wage structure instituted by the Debtor post-petition, Debtor anticipates that it will have no less than $25,000 per month of disposable income which it will commit to funding minimum payments pursuant to Debtor's Plan. Upon the occurrence that Debtor has built cash reserves in excess of $200,000, Debtor intends to provide such additional funds beyond the reserve as payment to the IRS pursuant to the terms of Class 1, further detailed below. All payments provided to the IRS in Class 1 or Class 2 as further described below shall be applied by the IRS first to any "trust fund portion" of the outstanding federal employment tax liabilities until paid in full. During the term of this Plan, the IRS shall only receive payment on this Plan and not through any alleged alter ego of the Debtor.

The Debtor is currently reviewing its financial records with regard to whether the Debtor has any causes of action relating to its outstanding accounts receivable or pursuant to 11 U.S.C. §§ 547, 548, 549, and 550. The Debtor does not believe that such causes of action exist and at this time, the Debtor cannot project that any and all such causes of action will create any additional funds for distribution to the unsecured creditors of the estate. In the event that such causes of action are determined to exist, the Debtor will contribute such funds to distribution payments of claims in Class 6 and Class 8.

## Plan Classifications

**Class 1.    United States of America – Internal Revenue Service ("IRS"). Secured, Impaired.**

The IRS has asserted tax liens against all assets owned by the Debtor in the amount of $1,583,176.82, which is secured by all of the Debtor's assets. The Debtor acknowledges that only a portion of the IRS's Allowed Claim can be paid during the term of Debtor's Plan. The Debtor proposes that the unpaid portions of the IRS's secured Allowed Claim will survive the completion of all Plan Payments or paid as a balloon payment upon the sixty-first month

following the Effective Date of Debtor's Plan.

As a Class 1 creditor, the IRS will recover all of the Debtor's disposable income following payments to creditors in Class 2, Class 3, Class 4, Class 5, and Class 6. In addition to the guaranteed payments detailed herein, Class 1, shall be entitled to sweep the Debtor's account of any amounts that exceed the necessary $200,000 operating reserve. The Debtor estimates that Class 1 shall recover approximately nine percent (9%) of its secured claim during the 60 months of this Plan. Payments to Class 1 shall begin on the fifty-second month of the Plan and shall be in the monthly amount of $16,955.29.

**Class 2.      Priority Tax Claims.  Priority, impaired.**

Priority Tax Claims scheduled and filed against the Debtor's Estate in the amount of $962,344.18 shall be paid as members of Class 2. The Allowed Claims of Class 2 creditors shall begin on the effective date and be paid in full within sixty (60) months of the Petition Date. Any reduction in the payout to Class 2 obtained from the claims objection process shall be split pro-rata between creditors in Class 1 and Class 6.

Class 3 includes the following claims:

1. The IRS has filed a priority claim in the amount of $589,282.34 as shown on proof of claim ("POC") 3-5;

2. The South Carolina Department of Employment and Workforce filed POC 8-1 detailing a priority claim in the amount of $10,296.73;

3. The South Carolina Department of Revenue ("SCDOR") filed POC 4-1 asserting a priority component of $84,372.40. The priority components of the SCDOR's Allowed Claim shall be paid as a member of Class 2;

4. Spartanburg County Tax Collector filed POC 5-1 in the amount of $277,157.53. This claim is disputed by the Debtor, but POC 5-1 shall be paid the amount of its Allowed Claim as a member of Class 2; and

The Tennessee Department of Revenue ("TN DOR") has filed POC 6-1 with a priority component of $1,235.18. This claim is disputed by the Debtor, but any Allowed Claim shall be treated as a Class 2 claim.

For the first twenty-four months of this Plan, Class 2 will receive distributions in the amount of $14,832.36, which shall be divided pro rata between the Allowed Claims of Class 2 creditors. Beginning in the twenty-fifth month after the Effective Date, Class 2 will receive

distributions in the amount of $22,458.06, which shall be divided pro rata between the Allowed Claims of Class 2 creditors. The Debtor projects that all Allowed Claims of Class 2 creditors shall be paid within sixty months of the Petition Date.

**Class 3.    Employee Claims. Priority, unimpaired.**

On the Petition Date, Debtor scheduled Employee Claims for wages and benefits in the amount of $32,501.47 along with the Debtor's contribution to such employee health insurance through BlueCross Blue Shield in the amount of $10,043.14. The Debtor has paid the wage and insurance portions of the Employee Claims pursuant to the Court's Orders on Payment of Post-Petition Claims (Doc 25). The sole exception are the wage claims of Clarissa Blum, which shall be treated as an Insider Claim and treated as detailed in Class 9.

Other Employee Claims consist of amounts accrued as paid time off ("PTO") by the employees. Those portions of the Employee Claims that are PTO shall be assumed by the Debtor and may be used by employees in the ordinary course of the Debtor's business. In this manner, all Class 3 claims will be paid in full by the Debtor, without impairment.

**Class 4.    Administrative Claims of the U.S. Trustee and Estate Professionals. Administrative Priority, impaired.**

This class consists of quarterly fees of the United States Trustee and any unpaid administrative claims of professionals. United States Trustee fees for the Debtor will be paid by the Debtor in full upon the due date and any amounts remaining due for quarterly fees must be paid prior to the closing of the case. The quarterly fees due to the United States Trustee under 28 U.S.C. § 1930 are not deemed subject to any bar date applicable to administrative claims, and shall be paid quarterly.

The Debtor currently estimates post-petition professional fees for McCarthy, Reynolds, & Penn, LLC ("Debtor's Counsel") and Ouzts Ouzts and Company ("Debtor's Accountant") in the aggregate amount of approximately $150,000. Post-petition professional fees incurred through the date of confirmation will only be paid upon Court approval. Unless otherwise ordered by the Court, and subject to the foregoing, post-petition professional fees incurred through the date of confirmation will be paid in full. Post-confirmation, professional fees, if any, will be paid monthly in the ordinary course.

Class 4 shall receive distributions in the amount $6,250.00 for the first twenty-four months following the Effective Date.

**Class 5.**     **General Unsecured Trade Vendors ("Trade Creditors").   Unsecured, impaired.**

This Class is a convenience-type of class that includes the Debtor's Trade Creditors with whom it does business as a part of its normal operations and amounts due are less than $11,000. The members of Class 5 are detailed in the attached to the Disclosure Statement as Exhibit B.

Members of Class 5 will receive no less than ten percent (10%) of their asserted claim. As a convenience-type class of creditors, Class 5 will receive distributions within thirty (30) days of the Effective Date of Debtor's Plan.

**Class 6.**     **General Unsecured Creditors.  Unsecured, impaired.**

This class consists of all unsecured creditors not included in Class 5. The members of Class 6 are detailed in Exhibit C to the Debtor's Disclosure Statement. Many members of Class 6 are the holders of claims that were classified on the Debtor's Scheduled as "Disputed Claims." Disputed Claims will not receive distributions if the disputed creditor failed to timely file a proof of claim prior to the claims bar date.

Allowed Claims held by members of Class 6 will receive no less than ten percent (10%) of their claims. For the initial twenty-four months following the Effective Date, Class 6 shall receive distributions in the amount of $3,112.44, which shall be paid pro rata to the holders of Allowed Claims of Class 6 creditors. For the next twenty-seven months, Class 6 shall receive distributions in the amount of $1,736.73, which shall be paid pro rata to the holders of Allowed Claims of Class 6 creditors. During the final nine months of the Plan, Class 6 shall receive distributions in the amount of $7,239.57, which shall be paid pro rata to the holders of Allowed Claims of Class 6 creditors.

**Class 7.**     **Pridestaff, Inc. ("Pridestaff")     Unsecured, impaired.**

This class of creditors contains only the claims against the Debtor held by Pridestaff. Pridestaff is a party to the VW Litigation has filed a lien against the VGA Plant in the approximate amount of $250,000. Pridestaff's claim was scheduled by the Debtor in the amount of $446,468.95 based upon work that Pridestaff performed on the VGA Plant as a subcontractor of the Debtor. Pridestaff has not filed a proof of claim in this matter.

In lieu of cash payment, Pridestaff shall be assigned the Debtor's rights to any recovery in the VW Litigation. Any proceeds from the VW Litigation in excess of Pridestaff's Allowed Claim shall be paid pro rata to creditors in Class 6 and Class 8.

11

**Class 8**.        **MOS Service, LLC ("MOS").**        **Unsecured, impaired.**

MOS has been placed in Class 8 on account of the default judgment it obtained against the Debtor on or about October 8, 2013 in the action styled as *MOS Service, LLC v. Industrie Service, LLC*, C/A No. 2013-CP-23-04032 in the Court of Common Please for Greenville County, South Carolina ("MOS Judgment").  MOS has filed POC 7 in the amount of $483,118.60, which updates the initial judgment amount by accounting for accrued interest at the statutory rate in South Carolina from the date of the MOS Judgment to the Petition Date.  While MOS has obtained a judgment against the Debtor, it remains unsecured as the Debtor does not own any real property.

As a member of Class 8, MOS shall receive a distribution of no less than ten percent (10%) of its Allowed Claim.  Class 8 shall receive monthly distributions in the amount of $805.20 for the sixty month term of the Plan.

**Class 9.**        **Insider Claims.**        **Unsecured, impaired.**

This class consists of claims of creditors who are statutory insiders of the Debtor, or otherwise closely related to the Debtor's management.  The members of Class 7 are detailed in Exhibit D to the Debtor's Disclosure Statement.  The claims in Class 7 have been scheduled by the Debtor in amounts that aggregate to $4,012,476.54.  Class 9 claims shall be subordinate to all other claims detailed herein and shall receive no distributions or other payment during the pendency of Debtor's Plan of Reorganization.

**Class 10.**        **Equity Holders.  Equity, impaired.**

All equity interests in the Debtor will be subordinated to the claims of Class 1 through Class 8. The single member of Class 10 is Hansjuergen Blum.  Class 10 shall receive no distributions or other payment during the pendency of Debtor's Plan.

## ARTICLE IV

### Feasibility of Proposed Plan of Reorganization and Means of Effectuation

The Debtor believes and asserts that it has the ability to make the payments set forth herein and in the Disclosure Statement.  Following the Petition Date, the Debtor instituted a cost savings program with its employees, which structures the Debtor's operations in such a fashion that a minimum of $25,000 per month shall be available to the Debtor for disbursement pursuant to this Plan.

11 U.S.C. §1129(a)(11) provides that in order for a plan to be confirmed, it must be

demonstrated that the plan is not likely to be followed by liquidation or the need for further reorganization of the debtor. The Debtor's post-petition operations demonstrate its ability to make the payments and distributions called for under this Plan. Therefore the Debtor asserts that the Plan is not likely to be followed by liquidation or the need for further reorganization of the Debtor.

## ARTICLE V
## Conditions Precedent and Implementation of the Plan

A.   **Conditions precedent to Confirmation**

Prior to Confirmation, the Bankruptcy Court shall have signed, and the Clerk of the Bankruptcy Court shall have entered an order granting approval of the Disclosure Statement and find that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code, and such order shall have become a Final Order. The Order Confirming Plan (a/k/a the "Confirmation Order") shall have been signed by the Bankruptcy Court and entered by the Clerk of the Bankruptcy Court.

B.   **Implementation on the Effective Date**

This Plan shall become effective and operative upon the Effective Date of Confirmation. The Effective Date of Confirmation is the day that is thirty (30) days after entry of the Order Confirming Plan unless any Order Confirming Plan shall be appealed, in which case the Effective Date shall be the day immediately after the Order Confirming Plan becomes a final, unappealed order.

## ARTICLE VI
## Claims Bar Date, Objections to Claims, and
## Status of Claims Post-Confirmation

A.   **Allowance of Claims**

Except as expressly provided herein or any order entered in this Chapter 11 Case prior to the Effective Date (including the Order Confirming Plan), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Bankruptcy Code, is agreed to be Allowed by the Debtor, or is ordered Allowed by Final Order of the Bankruptcy Court. Except as expressly provided in this Plan, the Debtor after Confirmation, will have and retain any and all rights and defenses the pre-petition and pre-confirmation Debtor had with respect to any Claims,

13

including, but not limited to, any causes of actions or defenses thereto. The Debtor also retains the right to file any necessary motions or other pleadings for estimation or determination of the amount of any disputed Claim. All Claims of any person or entity that owes money to the Debtor shall be disallowed unless and until such Person or Entity pays the full amount it owes the Debtor.

B.  **Claims Bar Date**

Unless otherwise ordered by the Court, the Claims Bar Date was **October 23, 2017 for all creditors except governmental units** and shall be **December 13, 2017 for a governmental unit** as such dates were set forth in the Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines issued on the Petition Date in this Case. Unless specifically ordered otherwise by the Court, only Claims scheduled by the Debtor without any contingent, unliquidated, or disputed notations, and those Claims filed by proof of claims on or before the Claims Bar Date, shall constitute Claims asserted against the Debtor in this Case. Any Claims filed after the Claims Bar Date shall be automatically disallowed unless the claimant successfully obtains an order of the Court or consent of the Debtor allowing a late-filed proof of claim.

C.  **Authority to Prosecute Objections**

The Debtor specifically reserves the right to object to any Claim the Debtor disputes, whether such Claim resulted from the Debtor's schedules or from a filed proof of claim. After the Effective Date, only the Debtor and bankruptcy counsel shall have the authority to file objections to Claims and to settle, compromise, withdraw, or litigate to judgment objections to Claims.

D.  **Claims Objection Bar Date**

Except as otherwise ordered by the Court, any and all objections to Claims shall be Filed with the Court and served upon the relevant Creditors by the date that is 60 days after the Effective Date or 60 days after such Claim or any amendment thereto is Filed, whichever date is later (the "Claims Objection Bar Date"). The Bankruptcy Court upon motion of the Debtor may extend this Claims Objection Bar Date. Any distributions called for in the Plan with respect to and on account of Claims to which objections have been filed, will be made as soon as

practicable only after such Claim becomes an Allowed Claim.

E. **Status of Claims After Confirmation**

From and after Confirmation of this Plan, the Debtor is exonerated from any and all pre-petition Claims that were not filed by a creditor or claimant of interest against the Debtor prior to the Claims Bar Date set by this Court or otherwise scheduled by the Debtor without qualification. The Debtor will, from and after Confirmation of this Plan, be indebted for, and obligated to pay, only those liabilities and obligations set forth in Article III of this Plan, and only those that are Allowed Claims.

## ARTICLE VII
## Executory Contracts

The Debtor intends to continue its normal operations in the ordinary course post-petition. Therefore, the Debtor shall assume all of the Executory Contracts, which Executory Contracts are shown in Schedule G of the Bankruptcy Schedules for the Debtor. Schedule G is also attached to the Disclosure Statement as Exhibit A, and there are not believed to be any cure amounts due as evidenced by the Debtor's Schedule F filed with the Court. Any and all cure amounts owed for Allowed Claims for the assumption of Executory Contracts will be treated as Administrative Claims and will be paid in full as set forth in Class 4 hereinabove.

## ARTICLE VIII
## Tax Consequences

The tax implications of the Debtor's Plan are discussed in the Debtor's Disclosure Statement. Following Plan Confirmation, the Debtor shall pay all income tax and employee withholding as they come due in the ordinary course of business. The Tax Consequences section of the Disclosure Statement, including any amendments or addendums thereto, is hereby specifically incorporated in the Plan by reference.

15

## ARTICLE IX

### Jurisdiction

1. <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction over the Debtor, its property, and all other parties appearing in this Case as provided by this Plan or by further Order of the Court. The Court shall retain jurisdiction as provided in the Bankruptcy Code until entry of the final decree closing the bankruptcy Case and as set forth thereafter in the final decree.  To the extent that may be necessary, Debtor may request that the Court enter a final order closing the Case but retaining jurisdiction for a limited purpose, including, but not limited to, presiding over any adversary proceedings or claim objections that may be pending at the time of the closing of the bankruptcy Case.

2. <u>Prosecution and Defense of Claims</u>.  The Debtor shall retain full power after Substantial Consummation to prosecute and defend any causes of action or proceedings existing at Substantial Consummation by or against it, or resulting from the administration of the estate of the Debtor or resulting from any other claim by or against the Debtor or its assets, or arising prior to or existing before Substantial Consummation.  Such reservations specifically include, but are not limited to, prosecution/assertion of the Chapter 5 Causes of Action and claims objections.

## ARTICLE X

### Post-Confirmation Acts

1. The Debtor, and its agents, shall perform all acts necessary to complete and consummate this Plan, to include:

    a. Prosecution of all claims and causes of action against third parties by the Debtor and claims objections filed by the Debtor against third parties;

    b. Execution and filing of all legal documents required; and

    c. Performing any and all functions required by the Code.

2. In addition to the continuing monthly reporting requirements that will continue until a final decree is entered in the Case, the Debtor shall cause to be filed with the Court a final report containing an itemized list of all disbursements by the Debtor after the Petition Date in this Case.

3. The Debtors administration shall remain in place and continue as the

16

management of the Debtor following Confirmation of this Plan and the occurrence of the Effective Date.

## ARTICLE XI

## "Cram Down" for Impaired Creditors

## Not Accepting the Plan

With respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number and two-thirds in amount, the proponent of this Plan requests that the Court find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interest that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the rejecting Impaired classes.

## ARTICLE XII

## Discharge of the Debtor

Under the Plan, the effects of Confirmation shall be as provided under Bankruptcy Code sections 1141(a), (b), (c), and (d)(3). The Debtor and the estate shall continue to exist following Confirmation and until Final Consummation. Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor shall not be discharged by Confirmation or under the Plan.

RESPECTFULLY SUBMITTED on this the 30th day of November 2017, at Columbia, South Carolina.

                              McCARTHY, REYNOLDS, & PENN, LLC

By:    /s/ W. Harrison Penn
        G. William McCarthy, Jr., I.D.#2762
        Daniel J. Reynolds, Jr., I.D.#9232
        W. Harrison Penn, I.D.#11164
        *Attorneys for the Debtor*
        1517 Laurel Street
        P.O. Box 11332
        Columbia, SC 29201-1332
        (803) 771-8836
        (803) 765-6960 (fax)
        hpenn@mccarthy-lawfirm.com