# CREDITORS' TRUST AGREEMENT

This Creditors' Trust Agreement ("Creditors' Trust Agreement" or "Agreement"), dated as of March ___, 2018, by and between HansJuergen Blum, as sole member of Industrie Service, LLC, and Ouzts Ouzts and Company, LLC, solely in its capacity as plan administrator hereunder (the "Plan Administrator"), is hereby being executed to facilitate the implementation of the Plan of Reorganization (as may be amended, modified or supplemented, the "Plan") filed by Industrie Service, LLC ("Debtor"), which provides for the establishment of the Creditors' Trust (as defined below) created by this Creditors' Trust Agreement and the administration and disposition of the Trust Property (as defined below), all for the benefit of the holders of certain Claims[1] as set forth in the Plan. The Plan Administrator's powers and duties are as set forth herein.

WHEREAS, on June 16, 2017 (the "Petition Date"), the Debtor filed a voluntary petition with the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court" or "Court") for relief under Chapter 11 of the Bankruptcy Code;

WHEREAS, pursuant to the Bankruptcy Code, the Debtor filed a Plan of Reorganization on November 30, 2017, which Plan calls for the creation of a Creditors' Trust to be administered by a Plan Administrator;

WHEREAS, the Plan will become effective on the Effective Date;

WHEREAS, the Plan provides, inter alia, for:

(a) the transfer to the Creditors' Trust (i) on the Effective Date, of twenty percent (20%) of Mr. Blum's membership interest in the Debtor.

(b) oversight, in accordance with the terms of the Plan, including for the benefit of the holders of Allowed General Unsecured Claims on whose behalf such distribution may be made in accordance with the terms of the Plan (collectively, the "Beneficiaries"; provided, however, that to the extent any general unsecured Claim is not an Allowed Claim, the holder of such claim shall not be deemed a Beneficiary hereunder); and

(c) the administration of the Creditors' Trust and the Trust Property by the Plan Administrator for the purposes and in the manner set forth in this Creditors' Trust Agreement subject to the Plan.

WHEREAS, the Creditors' Trust is intended to be treated as a liquidating trust pursuant to Treasury Regulations, Sec. 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, and as a grantor trust subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part 1, Subpart E of the Tax Code (hereinafter defined) owned by the Beneficiaries as grantors.

---

[1] Unless otherwise defined, all capitalized terms contained in this Liquidating Trust Agreement have the meanings ascribed to them in the Plan. To the extent that a definition of a term in the text of this Liquidating Trust Agreement and the definition of such term in the Plan are inconsistent, the definition in the Plan shall control.

NOW, THEREFORE, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE 1

## DECLARATION OF TRUST

**1.1    Purpose of the Creditors' Trust.**  The Debtor and the Plan Administrator, pursuant to the Plan and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Agreement, hereby constitute and create a trust (the "Creditors' Trust") for the purpose of receiving and distributing twenty percent (20%) of HansJeurgen Blum's membership interest in the Debtor. In particular, the Creditors' Trust, through the Plan Administrator, shall (i) pending the reduction to Cash of the Trust Property (and any non-Cash proceeds thereof), manage, and collect and obtain proceeds from the Trust Property, with the goal of reducing the Trust Property (and any non-Cash proceeds thereof) to Cash, (ii) make distributions pursuant to this Agreement, the Plan and the Confirmation Order, and (iii) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order and this Agreement. The Creditors' Trust shall not have authority to engage in a trade or business, and no portions of the Trust Property shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to Cash of the Trust Property (and any non-Cash proceeds thereof), with the goal of maximizing such assets for the benefit of the Beneficiaries.

**1.2    Name of the Creditors' Trust.**  The Creditors' Trust established hereby shall be known as the "Industrie Service Creditors' Trust." In connection with the exercise of its powers, the Plan Administrator may use such name or such variation thereof as it sees fit, and may transact the business and affairs of the Creditors' Trust in such name.

**1.3    Transfer of Assets to Create Creditors' Trust.**  Mr. Blum hereby irrevocably grants, releases, assigns, transfers, conveys and delivers to the Plan Administrator: (i) on the Effective Date, twenty percent (20%) of his membership interest in the Industrie Service, LLC; and (ii) such additional or different corpus as the Plan Administrator may from time to time acquire pursuant to this Creditors' Trust Agreement, to have and to hold in trust and to be applied as specified in the Plan and this Agreement. Upon the transfer of the Trust Property to the Creditors' Trust, Mr. Blum shall retain no interest in such Trust Property.  On the Effective Date and from time to time thereafter, Mr. Blum shall execute and deliver or cause to be executed and delivered to or upon the direction of the Plan Administrator any and all such documents, in recordable form where necessary or appropriate, and the Plan Administrator shall take or cause to be taken such further or other action, as the Plan Administrator may reasonably deem appropriate, to vest or perfect in or confirm to the Plan Administrator, title to and possession of all of the Trust Property.  In connection herewith, the Plan Administrator shall be responsible for establishing and maintaining such accounts as the Plan Administrator shall deem necessary or appropriate to carry out the provisions of this Creditors' Trust Agreement, and to

2

perform all obligations specified for the Plan Administrator under the Plan, the order confirming the Plan (the "Confirmation Order") and this Creditors' Trust Agreement.

**1.4    Acceptance by Plan Administrator.**  The Plan Administrator hereby accepts: (a) the appointment to serve as Plan Administrator; (b) the transfer of the Trust Property on behalf of the Creditors' Trust; and (c) the trust imposed on it by this Creditors' Trust Agreement. The Plan Administrator agrees to receive, hold, administer and distribute the Trust Property and the income or other proceeds derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order and this Agreement. The Plan Administrator agrees to perform all activities reasonably necessary to ensure the transfer of the Trust Property to the Plan Administrator on behalf of the Creditors' Trust.

## ARTICLE 2

## PLAN ADMINISTRATOR - GENERALLY

**2.1    Appointment.**   The initial Plan Administrator shall be Ouzts Ouzts and Company, LLC.

**2.2    Term of Service**.  The Plan Administrator shall serve until (a) the termination of the Creditors' Trust in accordance with Article 11 of this Agreement, or (b) the Plan Administrator's resignation, death, or removal, all in accordance with the provisions hereof.

**2.3    Services**.  The Plan Administrator shall be entitled to engage in such other activities as it deems appropriate that are not in conflict with the Plan, the Confirmation Order, this Agreement, the Creditors' Trust or the interests of the Beneficiaries resulting from this Agreement. The Plan Administrator shall devote such time as is necessary to fulfill all of its duties as Plan Administrator.

**2.4    Resignation, Death or Removal of Plan Administrator.**  The Plan Administrator may resign at any time upon ninety (90) days' written notice to the Debtor. Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a permanent or interim successor Plan Administrator.  The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown, which application may be brought by any party in interest.  In the event the Plan Administrator position becomes vacant, the vacancy shall be filled by a successor chosen by the Debtor and approved by the Bankruptcy Court.  Upon appointment pursuant to this Section 2.4, and upon the execution of an instrument accepting the appointment and delivering said acceptance instrument to the Bankruptcy Court, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his, her or its predecessor.

**2.5    Trust Continuance.**  The death, resignation or removal of the Plan Administrator shall not terminate the Creditors' Trust or revoke any existing agency (other than any agency of such Plan Administrator as a Plan Administrator) created pursuant to this Creditors' Trust Agreement or invalidate any action theretofore taken by the Plan Administrator, and the successor Plan Administrator agrees that the provisions of this Agreement shall be binding upon

and inure to the benefit of the successor Plan Administrator and all its heirs and legal and personal representatives, successors or assigns.

**2.6    Compensation and Expenses of Plan Administrator.**  In lieu of any commission or fees which may be fixed by applicable law for trustees or fiduciaries (and which are hereby waived by the Plan Administrator), the Plan Administrator and its agents, accountants, professionals and any other persons retained by him (collectively, the "Retained Professionals") shall be compensated from the Trust Property based on such professionals' standard hourly rate then in effect (and the standard hourly rates of others in their office then in effect, as applicable), unless agreed otherwise by such Retained Professionals and the Plan Administrator, and reimbursed for reasonable and necessary expenses.  The Plan Administrator shall be entitled to reimbursement from the Trust Property of all reasonable and necessary out-of-pocket expenses, and costs and expenses of making distributions to the Beneficiaries pursuant to the Plan and this Agreement. The Plan Administrator shall exercise its own business judgment to assure that the duties of the Plan Administrator are performed on a cost-efficient basis.  All requests for payment of fees and expenses by the Plan Administrator and any Retained Professional may be made on a monthly basis and shall be transmitted, upon request, (with a fourteen (14) day period to object) to the Court.  If no objection is received by the Plan Administrator or such Retained Professional within the fourteen (14) day period, the Plan Administrator may pay the fees and expenses without the need for further review or approval of the Bankruptcy Court or any other party.  If an objection to the payment of fees and expenses incurred by the Plan Administrator or any Retained Professional is received within the fourteen (14) day period, and such objection cannot otherwise be resolved, the Plan Administrator shall schedule a hearing in the Bankruptcy Court to resolve the objection.  If an objection is received, the Plan Administrator shall timely pay the undisputed portion of the invoice and shall reserve monies in the amount of the disputed portion of the invoice pending such resolution.  All fees and expenses of administration of the Creditors' Trust and representation of the Plan Administrator shall be paid from the Trust Property.

## ARTICLE 3

### POWERS AND LIMITATIONS OF PLAN ADMINISTRATOR

**3.1    General Powers of Plan Administrator.**  In connection with the administration of the Creditors' Trust, except as otherwise set forth herein, the Plan Administrator is authorized to perform only those acts necessary or desirable to accomplish the purposes of the Creditors' Trust. The Creditors' Trust shall succeed to all of the rights of the Debtors necessary to protect, conserve and liquidate the Trust Property as quickly as reasonably practicable consistent with the purposes of the Creditors' Trust.  Subject to the limitations set forth in this Agreement, the Plan and the Confirmation Order, and in addition to any powers and authority conferred by law, by the Plan and the Confirmation Order, or by any other section or provision of this Agreement, the Plan Administrator may exercise all powers granted him hereunder related to, or in connection with, the administration and liquidation of the Trust Property, and distribution of Cash and other net proceeds derived therefrom in accordance with this Agreement, the Plan and the Confirmation Order.  Without limiting, but subject to the foregoing, the Plan Administrator shall be expressly authorized to:

4

(a) collect, sell, lease, license, abandon or otherwise dispose of all assets of the Creditors' Trust subject to the terms of this Agreement and the Plan;

(b) effect annual or other distributions (as the Plan Administrator may determine in its discretion) under the Plan to the holders of Allowed Claims;

(c) pay all costs and expenses of administering the Creditors' Trust after the Effective Date and other powers necessary or incident thereto, including, without limitation, the power to employ and compensate persons to assist the Plan Administrator in carrying out the duties hereunder, obtain and pay premiums for insurance.

(d) implement the Plan including any other powers necessary or incidental thereto;

(e) level the distribution premium between Trust Beneficiaries;

(f) settle Disputed Claims, relevant Rights of Action, or disputes as to amounts owing to the Beneficiaries;

(g) seek an estimation of contingent or unliquidated Claims pursuant to 11 U.S.C. 502(c);

(h) participate in any post-Effective Date motions to amend or modify the Plan or this Creditors' Trust Agreement, or appeals from the Confirmation Order;

(i) participate in actions to enforce or interpret the Plan;

(j) bind the Creditors' Trust;

(k) open and maintain bank accounts on behalf of or in the name of the Creditors' Trust, calculate and make distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Creditors' Trust;

(l) receive, conserve and manage the Trust Property in such a manner that each Trust Beneficiary receives an equal distribution under the Debtor's Plan;

(m) if the Plan Administrator determines that any of the Beneficiaries of the Creditors' Trust may, will or has become subject to adverse tax consequences, take such actions that the Plan Administrator, in its reasonable discretion, determines are intended to alleviate such adverse tax consequences, including, without limitation, dividing the Trust Property into several trusts or other structures;

(n) file, if necessary, any and all tax and information returns of the Creditors' Trust;

(o) hold legal title to any and all Trust Property;

5

(p) enter into contracts and other business arrangements;

(q) represent the Creditors' Trust before governmental and other regulatory bodies;

(r) remove Trust Property or the situs of administration of the Creditors' Trust from one jurisdiction to another at any time or from time to time;

(s) make decisions regarding the retention or engagement of professionals, employees and consultants by the Creditors' Trust and to pay the fees and charges incurred by the Creditors' Trust on or after the Effective Date for fees of professionals, disbursements, expenses or related support services relating to the implementation of the Plan and this Agreement, without application to the Bankruptcy Court, except as set forth herein;

(t) pay all lawful expenses, debts, charges and liabilities of the Creditors' Trust;

(u) withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge that the Plan Administrator has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof; and in the exercise of its discretion and judgment, the Plan Administrator may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section 3.1;

(v) enter into any agreement or execute any document required by or consistent with the Plan and the purposes of the Creditors' Trust and perform all obligations thereunder;

(w) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice or decline to accept title to or ownership of, any assets if he concludes that they are of no benefit to the Creditors' Trust;

(x) if any performance under this Agreement by the Plan Administrator is subject to the laws of any state or other jurisdiction in which the Plan Administrator is not qualified to act as Plan Administrator, nominate and appoint a person duly qualified to act as Plan Administrator in such state or jurisdiction and require from each such person that security as designated by the Plan Administrator; confer upon such person any and all of the rights, powers, privileges and duties of Plan Administrator, subject to the conditions and limitations of this Agreement and applicable law; require such person to be answerable to the Plan Administrator for all monies, assets and other property that may be received in connection with the administration of all property; and remove such person, with or without cause, and appoint a successor person at any time by the execution by the Plan Administrator of a written instrument declaring such person removed from office, and specifying the effective date and time of removal;

(y) invest Cash as deemed appropriate by the Plan Administrator in Cash equivalents; provided, however, that the scope of any such permissible investments shall be

6

limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust," within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise;

(z) hold title to any investment in its name as Plan Administrator or in a nominee's name;

(aa) collect amounts due, and to exercise all voting and other rights (including, without limitation, any foreclosure or similar rights) under or attendant to any notes, accounts receivable, general partnership interests, limited partnership interests, stock holdings, settlement agreements or other contracts or contract rights or other assets comprising Trust Property or proceeds thereof;

(bb) sue and be sued, and to participate in any proceeding with respect to any matter regarding or relating to this Creditors' Trust Agreement, the Confirmation Order, Claims, or the Creditors' Trust;

(cc) delegate any or all of the discretionary power and authority herein conferred at any time with respect to any portion of the Trust Property or other powers enumerated herein to any one or more reputable individuals or recognized institutional advisors or investment managers or consultants without any liability for any action taken or omission made because of such delegation, except for liability specifically provided for in this Creditors' Trust Agreement; and

(dd) take all other actions consistent with the provisions of this Agreement, the Plan and the Confirmation Order that the Plan Administrator deems reasonably necessary or desirable to administer the Creditors' Trust.

**3.2  Adversary Proceedings.**  Except as specifically set forth otherwise herein, the Plan Administrator shall have the exclusive authority to direct the Debtors to pursue all Rights of Action.  The Plan Administrator may pursue, abandon, or release any or all Rights of Action as it deems appropriate, without the need to obtain approval or any or other further relief from the Court. The Plan Administrator, in its sole discretion, may offset any such claim held against a person or entity, against any payment due such person or entity under the Plan.  The Plan Administrator, in its sole discretion, may accept or reject any offers to settle any Rights of Action where the amount in controversy does not exceed $100,000 without court approval, subject to the Plan Administrator's fiduciary duties to preserve the value of the Creditors' Trust and general notions of good faith and fair dealing.  If the amount in controversy exceeds $100,000, then the Plan Administrator may only settle such Rights of Action upon filing a motion with the Court pursuant to Rule 9019 of the Bankruptcy Rules. All parties-in-interest shall have the right to object to any motion brought under Rule 9019 of the Bankruptcy Rules to settle any Rights of Action and nothing contained herein shall prejudice those rights or alter the provisions of Rule 9019 in any way.

**3.3    Sale of Debtors' Property.**  The Plan Administrator may only sell Trust Property upon Court approval after filing a motion with the Court.  All parties-in-interest shall have the right to object to any motion to sell Trust Property and nothing contained herein shall prejudice those rights or alter the provisions of the Bankruptcy Code.

**3.4    Books and Records.**  The Plan Administrator shall maintain, in respect of the Creditors' Trust, books and records relating to the Trust Property and income and proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Creditors' Trust in such detail and for such period of time as may be necessary to enable him to make full and proper reports in respect thereof. Except as expressly provided in this Agreement, the Plan or the Confirmation Order, nothing in this Agreement is intended to require the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Creditors' Trust, or as a condition for making any payment or distribution out of the Trust Property or proceeds therefrom.  Upon final distribution pursuant to this Agreement (the "Final Distribution Date"), the Plan Administrator shall retain the books, records and files that shall have been delivered to or created by the Plan Administrator.  At the Plan Administrator's discretion, all of such records and documents may be destroyed at any time after two (2) years after the Final Distribution Date.

**3.5    Consultation with the Unsecured Creditors.**  The Plan Administrator shall apply to the Bankruptcy Court, on not less than ten (10) days' written notice to the creditors, for authority with respect to any sale, refinancing or other disposition of all or a portion of any Trust Property (or non-Cash proceeds thereof). With respect to any such application, the Plan Administrator will have the burden of demonstrating to the Court that the proposed action is in the best interest of the Beneficiaries.

**3.6    Reporting and Final Accounting of Plan Administrator.**  The Plan Administrator shall provide regular reports on such basis as may reasonably be requested by the Debtors' creditors.  The Plan Administrator shall within sixty (60) days after the earlier of: (i) the Final Distribution Date; or (ii) the Plan Administrator's resignation, removal, liquidation or death (in which case, the obligation contained in this Section 3.6 shall pass to the Plan Administrator's estate), render a final accounting containing at least the following information:

(a)    a description of the Trust Property;

(b)    a summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Creditors' Trust and the Trust Property during the Plan Administrator's term of service, including their source and nature;

(c)    separate entries for all receipts of principal, income or other proceeds;

(d)    the ending balance of all Trust Property (including any proceeds thereof) as of the date of the Plan Administrator's accounting, including the Cash balance on hand and the name and location of the depository where it is kept; and

(e)    all known liabilities owed by the Creditors' Trust.

The final accounting shall be presented to the Bankruptcy Court for approval, and the Debtors' creditors shall have notice that the final accounting has been filed and the opportunity for a hearing on the approval of the accounting and the discharge of the Plan Administrator.

**3.7     Limitations on the Plan Administrator.** Anything in this Creditors' Trust Agreement to the contrary notwithstanding, the Plan Administrator shall not do or undertake any of the following:

(a)     take any action in contravention of the Plan, the Confirmation Order or this Agreement;

(b)     take any action that would significantly jeopardize treatment of the Creditors' Trust as a "liquidating trust" for federal income tax purposes;

(c)     lend any Trust Property to the Plan Administrator;

(d)     purchase Trust Property from the Creditors' Trust;

(e)     transfer Trust Property to another trust with respect to which the Plan Administrator serves as Plan Administrator;

(f)     commingle any of the Trust Property with its own property or the property of any other person;

(g)     grant liens on any of the Trust Property; or

(h)     guarantee any debt incurred by any third party.

**3.8     Plan Administrator Conflicts of Interest.** If the Plan Administrator determines, in the exercise of the Plan Administrator's discretion, that he has a conflict of interest with respect to any matter, the Plan Administrator may request the Bankruptcy Court to approve the Plan Administrator's choice of a designee to act on behalf of the Creditors' Trust solely with respect to such matter, with such designee's authority to so act on behalf of the Creditors' Trust to terminate upon the matter's conclusion.

# ARTICLE 4

## LIABILITY OF PLAN ADMINISTRATOR

**4.1     Plan Administrator Standard of Care; Exculpation; Limitation on Liability.** Neither the Plan Administrator, nor any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Plan Administrator, shall be personally liable for any act or omission in connection with affairs of the Creditors' Trust to any Beneficiary or any other person, except for such of the Plan Administrator's acts or omissions as shall constitute fraud, bad faith, willful misconduct, gross negligence, reckless disregard of its duties, self-dealing, or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court. Persons dealing with the Plan Administrator, or seeking to assert claims against the Plan Administrator, shall have recourse only to the Trust Property (excluding any fund to pay administrative costs) to

9

satisfy any liability incurred by the Plan Administrator to such persons in carrying out the terms of this Agreement.

**4.2    Indemnification.** Except as otherwise set forth in the Plan or Confirmation Order, the Plan Administrator (and in their capacity as such, any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Plan Administrator) shall be defended, held harmless and indemnified from time to time by the Creditors' Trust against any and all losses, claims, damages, taxes, suits, costs, expenses (including attorneys' fees and disbursements) and liabilities to which such indemnified parties may be subject by reason of such indemnified party's execution in good faith and in a manner that the person reasonably believed to be consistent with the terms of the Plan and this Agreement of its or its duties pursuant to the discretion, power and authority conferred on such person by this Agreement, the Plan or the Confirmation Order; provided, however, that the Creditors' Trust shall not indemnify the Plan Administrator or any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Plan Administrator for any actions taken by such indemnified parties that constitute bad faith, willful misconduct, gross negligence, reckless disregard of duty, fraud, self-dealing or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court. Satisfaction of any obligation of the Creditors' Trust arising pursuant to the terms of this Section 4.2 shall be payable only from the Trust Property and such right to payment shall be prior and superior to any other rights to receive on behalf of any Beneficiary any distribution of Trust Property or proceeds thereof. The Creditors' Trust shall have the sole right to control the defense and settlement of Claims as to which it is obligated to indemnify (unless it refuses to defend) and the Debtors' creditors may direct such defense.

**4.3    Bond.** The Plan Administrator shall not be obligated to give any bond or surety for the performance of any of its duties, unless otherwise ordered by the Bankruptcy Court; if so ordered, all costs and expenses of procuring a bond shall be deemed expenses of the Creditors' Trust.

**4.4    No Liability for Acts of Predecessor Plan Administrators.** No successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator unless a successor Plan Administrator expressly in writing assumes such responsibility.

**4.5    Reliance by Plan Administrator on Documents, Mistake of Fact or Advice of Counsel.** Except as may be otherwise provided in this Agreement, the Plan Administrator may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Plan Administrator to be genuine and to have been presented by an authorized party. Also, the Plan Administrator shall not be liable if he acts in good faith based on a mistake of fact before having actual knowledge of such mistake. The Plan Administrator shall not be liable for any action taken or suffered by the Plan Administrator in reasonably relying upon the advice of counsel or other professionals engaged by the Plan Administrator in accordance with this Agreement.

**4.6    Insurance.**   Though not required, the Plan Administrator may cause the Creditors' Trust to purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses the Plan Administrator may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to the implementation and administration of the Creditors' Trust and this Agreement.

## ARTICLE 5

## OBLIGATIONS OF HANSJURGEN BLUM

**5.1    Turnover of Collections to Plan Administrator**.  Except as specifically otherwise contemplated by the Plan, the Debtor shall promptly report and turn over to the Plan Administrator all distributions based upon the Trust's position as holder of twenty percent (20%) membership interest in Industrie Service, LLC.

## ARTICLE 6

## BENEFICIARIES

**6.1    Effect of Death, Incapacity or Bankruptcy of Beneficiary.**  The death, incapacity or bankruptcy of a Beneficiary during the term of the Creditors' Trust shall not operate to terminate the Creditors' Trust during the term of the Creditors' Trust nor shall it entitle the representatives or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Trust Property or for a petition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary's representatives and creditors (in such capacity) under this Creditors' Trust Agreement or in the Creditors' Trust.

**6.2    Standing of Beneficiary.**  Except as may be expressly provided in this Creditors' Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Plan Administrator to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Plan Administrator) upon or with respect to the Trust Property.

## ARTICLE 7

## DISTRIBUTIONS

**7.1    Distributions from Trust Property.**  All payments to be made by the Plan Administrator to any person shall be made only through the Debtor in accordance with the Plan, the Confirmation Orders and this Agreement and from the Cash or Cash proceeds of Trust Property and only to the extent that the Debtor has sufficient Cash to make such payments at the direction of the Creditors' Trust in accordance with and to the extent provided for in the Plan, the Confirmation Order and this Creditors' Trust Agreement.  Any distribution made by the Debtor in good faith at the direction of the Creditors' Trust shall be binding and conclusive on all interested parties, absent manifest error.

11

   **7.2**  **Distributions; Withholding.** The Plan Administrator shall make distributions at least annually, at such times, and from time to time, as the Plan Administrator, in its sole discretion, deems appropriate from all net Cash income and all other Cash proceeds received by the Debtors; <u>provided</u>, <u>however</u> that the Creditors' Trust may retain such amounts (a) as are reasonably necessary to meet known and contingent liabilities and to maintain the value of the Trust Property during the term of the Creditors' Trust, (b) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable costs and fees (including attorneys' and other professional fees) and expenses of the Plan Administrator in connection with the performance of its duties in connection with this Agreement, and (c) to satisfy all other liabilities incurred or assumed by the Creditors' Trust (or to which the Trust Property are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement. All such distributions shall be made, subject to any withholding or reserve, as provided in this Agreement, the Plan or the Confirmation Order. Additionally, the Plan Administrator may withhold from amounts otherwise distributable on behalf of Beneficiaries any and all amounts, determined in the Plan Administrator's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Plan Administrator may withhold the entire distribution to any holder of an Allowed Claim until such time as the holder provides the Plan Administrator with the necessary information to comply with any withholding requirements of any governmental unit. If the holder of an Allowed Claim fails to provide the Plan Administrator with necessary information, including a proper tax identification number ("<u>TIN</u>"), to comply with any withholding requirements of any governmental unit within sixty (60) days after the date of first notification, at the last address known to the Debtors, by the Plan Administrator to the holder of the need for such information, then the holder shall be deemed to have waived the right to receive any distribution from the Debtors.

   Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to this Agreement or the Plans unless and until such holder has made arrangements satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Agreement or the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Agreement or the Plans.

   **7.3**  **Method of Cash Distributions.** Any Cash payment directed by the Creditors' Trust to be made by the Debtors pursuant to the Plans will be in U.S. dollars and may be made, at the sole discretion of the Plan Administrator, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. Mailed distributions shall be sent to the address provided for the holder of an Allowed Claim in its respective proof of claim filed with the Court or Claims agent provided for in the Plan, if any, or if no proof of claim was filed, at the address provided on the Schedules or such holder's last address known to the Debtors. The Plan Administrator shall not be required to locate the current address for any holder of an Allowed Claim whose distribution is returned to the Plan Administrator as undeliverable, in accordance with <u>Section 8.6</u> herein.

**7.4    Minimum Distributions.**  If the amount of Cash to be distributed to the holder of an Allowed Claim is less than fifty dollars ($50) on a particular distribution date, the Plan Administrator may hold the Cash distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than fifty dollars ($50).  Notwithstanding the preceding sentence, if the amount of Cash distribution to any Holder of an Allowed Claim never aggregates more than fifty dollars ($50), then the Plan Administrator shall not be required to distribute Cash to any such holder, and the resulting savings shall revert to the Creditors' Trust to be distributed pro rata to other holders of Allowed Claims.  No distribution shall be made pursuant to the Plan to a holder of a Claim, disputed or otherwise, unless and until such Claim becomes an Allowed Claim.

**7.5    Setoffs and Recoupments.**  The Plan Administrator may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Administrator of any such claims, rights and causes of action that the Creditors' Trust may possess against such holder.

**7.6    Undeliverable Distributions.**

(a)    Holding of Undeliverable Distributions.  If any distributions to any person is returned to the Plan Administrator as undeliverable, no further distributions shall be made to such person unless and until the Plan Administrator is notified, in writing, of such person's then-current address, at which time all missed distributions shall be made to such person without interest.  Subject to subsection (b) below, undeliverable distributions shall remain in the possession of the Plan Administrator until such time as the Plan Administrator makes a subsequent distribution.  Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind.  Any check that is not cashed or otherwise deposited within three (3) months after the check's date shall be deemed an undeliverable distribution under this Agreement and the Plans.

(b)    Failure to Claim Undeliverable Distributions.  Any person that does not assert its rights pursuant to this Agreement to receive a distribution within four (4) months after the first attempted delivery shall have its claim to such undeliverable distribution discharged and shall be forever barred from asserting such claim.  In such case, all unclaimed distributions shall revert to the Creditors' Trust and shall be applied in accordance with the terms of this Agreement and the Plan.  Nothing contained in this Agreement shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim.  The Plan Administrator may rely on the Schedules or any filed Proof of Claim for addresses for any distribution under the Plan.

13

# ARTICLE 8

## TAXES

**8.1 Income Tax Status.** It is intended that the Creditors' Trust be classified for federal income tax purposes as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and as a "grantor trust" subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part I, Subpart E of the Tax Code that is owned by its Beneficiaries. Accordingly, the parties hereto intend that the Beneficiaries of the Creditors' Trust be treated as if they had received a distribution of the applicable assets transferred to the Creditors' Trust and then contributed such assets to the Creditors' Trust. As such, notwithstanding anything set forth herein, the transfer of assets to the Creditors' Trust shall be treated for all purposes of the Tax Code as a transfer from the Debtors to creditors to the extent the creditors are beneficiaries of the Creditors' Trust followed by a deemed transfer by the Beneficiaries to the Creditors' Trust. The Beneficiaries will be treated as grantors and deemed owners of the Creditors' Trust.

(a) All parties including the Debtors, the Plan Administrator and all Beneficiaries of the Creditors' Trust must value all assets transferred to the Creditors' Trust consistently and those valuations must be used for all federal income tax purposes. The Plan Administrator must file returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The assets shall be valued based upon the Liquidation Plan Administrator's good faith determination of their fair market value.

(b) Anything set forth herein to the contrary notwithstanding, the Creditors' Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of Trust Property during liquidation. All income of the Creditors' Trust must be subject to tax on a current basis, including income retained in any disputed claims reserve. The taxable income of the Creditors' Trust will be allocated to and among Beneficiaries who are grantors of the Creditors' Trust as required by virtue of their being grantors and deemed owners of the Creditors' Trust and they shall each be responsible to report and pay taxes due on their appropriate share of Creditors' Trust income.

(c) The Creditors' Trust shall be classified as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and in the event of any inconsistency between any term or provision herein, in the Plan or in the Disclosure Statement necessary for the Creditors' Trust to be deemed at all times a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and any other term or provision herein, in the Plan or in the Disclosure Statement, the term(s) and provision(s) necessary for the Creditors' Trust to be deemed a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 shall govern. Similarly, anything to the contrary set

14

forth herein, in the Plan or in the Disclosure Statement notwithstanding, to the extent any term or provision herein, in the Plan or in the Disclosure Statement would result in the Creditors' Trust not being classified as a liquidating trust at all times pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, such term or provision shall be ineffective and reformed to the extent necessary for the Creditors' Trust to be classified at all times as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124.

(d) As used in this Creditors' Trust Agreement, the following terms shall have the following meanings:

"Tax Code" shall mean the Internal Revenue Code of 1986, 26 U.S.C. § 1 et seq., as amended from time to time, and corresponding provisions of any subsequent federal revenue act. A reference to a section of the Tax Code shall include a reference to any and all Treasury Regulations interpreting, limiting or expanding such section of the Tax Code; and

"Treasury Regulations" shall mean regulations promulgated under the Tax Code, including, but not limited to the Procedure and Administration Regulations, as such regulations may be amended from time to time.

**8.2   Tax Returns.**  The Plan Administrator shall prepare and provide to, or file with, the appropriate parties such notices, tax returns, information returns and other filings as may be required by the Tax Code and may be required by applicable law of other jurisdictions. The Plan Administrator shall be responsible for filing all federal, state and local tax returns and information returns of the Creditors' Trust. The Plan Administrator shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

# ARTICLE 9

## TERMINATION OF TRUST

**9.1   Term**.  The Creditors' Trust shall terminate upon the earlier of (a) the date on which all of the Trust Property is liquidated in accordance with the Plan, the funds in the Creditors' Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Case is a Final Order or (b) ten (10) years from the date of creation of the Creditors' Trust, unless extended by the Bankruptcy Court as provided herein.  The Plan Administrator shall at all times endeavor to liquidate expeditiously the Trust Property (or any non-Cash proceeds thereof), and in no event shall the Plan Administrator unduly prolong the duration of the Creditors' Trust.  The foregoing notwithstanding, in the event that the Plan Administrator determines that all of the Trust Property and/or proceeds thereof will not, despite reasonable efforts, be distributed by the date which is ten (10) years from the date of creation of the Creditors' Trust, or for any other reason consistent with this Agreement and the Plan, and if warranted by the facts and circumstances, the Plan Administrator may petition the Bankruptcy Court to extend the term of the Creditors' Trust.  Each and every such extension

15

must be for a reasonable finite period based on the particular facts and circumstances, must be subject to the approval of the Bankruptcy Court and approved upon a finding that the extension is necessary to the liquidating purpose of the Creditors' Trust and must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term.

**9.2    Winding Up and Discharge of the Plan Administrator.**  For the purposes of winding up the affairs of the Creditors' Trust at its termination, the Plan Administrator shall continue to act as Plan Administrator until its duties have been fully discharged. After doing so, the Plan Administrator, and its agents and employees shall have no further duties or obligations hereunder, except as required by this Agreement, the Plan, the Confirmation Order or applicable law concerning the termination of a trust. Upon a motion by the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator, and its agents and employees of any further duties, discharging the Plan Administrator and releasing its bond, if any.

## ARTICLE 10

### MISCELLANEOUS PROVISIONS

**10.1    Amendments.**  The Plan Administrator may propose to the Bankruptcy Court the modification, supplementation or amendment of this Creditors' Trust Agreement.  Such proposed modification, supplementation or amendment shall be in writing and filed with the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, notice of such filing shall be served on the mailing matrix in these matters.  No modification, supplementation or amendment of this Creditors' Trust Agreement shall be effective except upon a Final Order of the Court.

**10.2    Waiver.**  No failure by the Plan Administrator to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**10.3    Cumulative Rights and Remedies.**  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**10.4    No Bond Required.**  Any state law to the contrary notwithstanding, the Creditors' Trustee (including any successor Creditors' Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

**10.5    Irrevocability.**  The Creditors' Trust is irrevocable.

**10.6    Division of Trust.**  Under no circumstances shall the Plan Administrator have the right or power to divide the Creditors' Trust unless authorized to do so by the Bankruptcy Court.

**10.7    Governing Law.**  This Agreement shall be governed and construed in accordance with the laws of the State of South Carolina, without giving effect to rules governing the conflict of laws.

Case 17-02995-hb    Doc 86    Filed 03/09/18    Entered 03/09/18 10:43:31    Desc Main
Document      Page 17 of 19

**10.8   Retention of Jurisdiction.**   To the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Creditors' Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, or this Agreement, or any entity's obligations incurred in connection therewith or herewith, including without limitation, any action against the Plan Administrator or any professional retained by the Plan Administrator or the Creditors' Trust, in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret or construe any provision of this Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address as set forth in Section 12.10 of this Agreement or such other address as such party may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Agreement.

**10.9   Severability.**  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**10.10   Notices.**   All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses:

| | |
|---|---|
| If to the Debtor: | W. Harrison Penn |
| | McCarthy, Reynolds, & Penn, LLC |
| | 1517 Laurel Street (29201) |
| | P.O. Box 11332 |
| | Columbia, SC 29211-1332 |
| | |
| If to the Plan Administrator: | Marty P. Ouzts |
| | Ouzts, Ouzts & Company, P.C. |
| | P.O. Box 25448 |
| | Columbia, SC 29224 |

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices and communications shall

be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

**10.11  Further Assurances.**  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**10.12  Integration.**  This Agreement, the Plan and the Confirmation Order constitute the entire agreement, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants or obligations except as set forth herein, in the Plan or in the Confirmation Order. This Agreement, together with the Plan and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**10.13  Successors or Assigns**.  The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**10.14  Interpretation.**  The enumeration and section headings contained in this Creditors' Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations.  The words herein, hereby and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**10.15  Relationship to the Plan.**  The principal purpose of this Creditors' Trust Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**10.16  Counterparts.**  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have either executed this Creditors' Trust Agreement, or caused it to be executed on its behalf by its duly authorized officer all as of the date first above written.

HansJurgen Blum

By: _____
    Name:
    Individually



PLAN ADMINISTRATOR


By:_____
Ouzts Ouzts and Company, LLC, solely in its capacity as Plan Administrator

19